**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ALBERT R. GARCIA, JR., | 3:10-cv-00189-RCJ (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| JASON GEER, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 19.)[1] Plaintiff failed to oppose the motion, despite being given an extension of time to file an opposition. (*See* Doc. # 23, Doc. # 24.) After a thorough review, the court recommends that Defendants' motion be granted.

## I. BACKGROUND

At all relevant times, Plaintiff Albert R. Garcia, Jr. (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 6).) The events giving rise to this action took place at Northern Nevada Correctional Center, although Plaintiff is no longer incarcerated within NDOC. (*Id.* at 1, Doc. # 19 at 1.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Jason Geer, a cook at NNCC, and Jimmie Burton, the former Food Manager at NNCC. (Doc. # 6 at 2, Doc. # 19 at 2.)

Plaintiff submitted his application for leave to proceed *in forma pauperis* on April 2,

---
[1] Refers to the court's docket number.

1  2010. (Doc. # 1.) The application was granted, and Plaintiff's Complaint filed on October 28,
2  2010. (Doc. # 5 and Doc. # 6.) In his Complaint, Plaintiff alleges that he was denied his special
3  medical diet in violation of the Eighth and Fourteenth Amendments. (Doc. # 6 at 2.)
4  Specifically, Plaintiff alleges that he suffers from high blood pressure, has diabetes, and is in
5  renal failure requiring dialysis three (3) times a week. (*Id.* at 3.) He asserts that he was issued
6  a restricted medical diet that required 2,600 calories with a lunch and evening snack, high
7  protein with no milk, and restrictions with respect to foods that may impact his renal failure.
8  (*Id.*) He alleges that Defendants refused to provide him with the medically prescribed diet. and
9  as a result, he lost fifteen (15) pounds, lost muscle mass in both legs, and went "man down"
10 twice when his blood sugar was low. (*Id.* at 3-4.)

11       Plaintiff admits that he filed a Petition for Writ of Mandamus (Petition) in state court
12 related to his medically ordered diet, and that the Petition was ultimately denied. (Doc. # 6 at
13 4.)

14       Defendants move for summary judgment arguing the following: (1) the action should
15 be brought only under the Eighth Amendment and not the Fourteenth Amendment;
16 (2) the instant lawsuit is barred by the doctrine of res judicata; (3) Defendants did not act with
17 deliberate indifference; (4) the statute of limitations bars Plaintiff's claims arising prior to April
18 2, 2008; and (5) Defendants are entitled to qualified immunity. (Doc. # 19.)

19                       **II. LEGAL STANDARD**

20       "The purpose of summary judgment is to avoid unnecessary trials when there is no
21 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,
22 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in
23 favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing
24 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate
25 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that
26 there is no genuine issue as to any material fact and that the movant is entitled to judgment as
27 a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the
28 material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.

at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party

to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

Finally, the court notes that while Plaintiff failed to oppose the motion despite being given an extension of time, the Ninth Circuit has instructed that "a verified complaint may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and if it sets forth the requisite facts with specificity." *Moran v. Selig*, 447 F.3d 748, 760 n. 16 (9th Cir. 2006) (citing *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc) ("A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment it if is based on personal knowledge and sets forth specific facts admissible in evidence.")). Accordingly, even though Plaintiff has failed to submit any opposition to Defendants' motion, because he is proceeding pro se, the court must still undertake an analysis of his verified complaint) to ascertain whether any of his assertions create a genuine issue of material fact.

///

## III. DISCUSSION

### A. The Complaint will be analyzed only under the Eighth Amendment

Defendants are correct that Plaintiff's Complaint should be analyzed as setting forth a colorable claim under the Eighth Amendment, and not the Fourteenth Amendment. This is because the Eighth Amendment provides an "explicit textual source of constitutional protection" for Plaintiff's claim, and therefore the Eighth Amendment, and not the more generalized notions of due process under the Fourteenth Amendment, is used to analyze Plaintiff's claim. *See Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) (citation omitted).

### B. Res Judicata

Defendants argue that Plaintiff's lawsuit is barred by the doctrine of res judicata. (Doc. # 19 at 4-7.) Specifically, they assert that on November 8, 2007, Plaintiff filed his Petition in the First Judicial District Court of the State of Nevada in and for Carson City asserting the same claims as he does here, against identical parties or those in privity with the parties named here, and was determined on the merits in NDOC's favor. (*Id.* at 4, Ex. A.)

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *accord University of Nevada v. Tarkanian*, 879 P.3d 1180, 1191, 110 Nev. 581, 598 (Nev. 1994). Res judicata "protects 'against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (citation omitted); *see also Tarkanian*, 879 P.3d at 1191, 110 Nev. at 598 ("The doctrine is intended to prevent multiple litigation causing vexation and expense to the parties and wasted judicial resources by precluding parties from relitigating issues they could have raised in a prior action concerning the same controversy." (citation omitted)).

Collateral estoppel, raised by Defendants, "is generally invoked when separate causes of action are presented in the first and second suits. The doctrine provides that any issue that was *actually and necessarily litigated* in one action will be estopped from being relitigated in

5

1 a subsequent suit." *Tarkanian*, 879 F.3d at 1191, 110 Nev. at 599 (emphasis original).[2] "The
2 claim of a prevailing plaintiff is merged into the judgment. If the defendant prevails, the
3 plaintiff is thereafter barred from subsequent suits on the same claim." *Id.* at 1192, 110 Nev.
4 at 600 (citing *Restatement (Second) of Judgments* § 24 (1982)). "The modern view is that
5 claim preclusion embraces all grounds of recovery that were asserted in a suit, as well as those
6 that could have been asserted, and thus has a broader reach than collateral estoppel." *Id.*
7 (citations omitted).

8 The federal court must apply the preclusion law of the state where the state court
9 judgment was rendered. *See Clements v. Airport Authority of Washoe County*, 69 F.3d 321,
10 328, n. 4 (9th Cir. 1995) (citations omitted); *see also In re Harmon*, 250 F.3d 1240, 1245 (9th
11 Cir. 2001). In Nevada, "generally, to establish a claim of collateral estoppel or issue preclusion,
12 a litigant must show that an issue of fact or law was necessarily and actually litigated in a prior
13 proceeding." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 234-35, 121 Nev. 464 (Nev. 2005).
14 Like federal common law, Nevada requires the following three elements be met for claim
15 preclusion to apply: (1) there was a final, valid judgment on the merits; (2) the same claim or
16 cause of action was involved in both suits; and (3) the parties are identical or in privity. *See*
17 *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713, 124 Nev. 1048, 1054 (Nev. 2008); *accord*
18 *Tarkanian*, 879 P.2d at 1191-92, 110 Nev. 599-600.

19 While Defendants do not specifically request that the court take judicial notice of the
20 records in Plaintiff's state court case, "[a] court may take judicial notice of 'matters of public
21 record'." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)(citation omitted); *see*
22 *also Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995) (taking judicial notice of records
23 to determine preclusive effect of earlier case). Accordingly, the court will take judicial notice
24 of the public records in Plaintiff's state court case, Case No. 07-EW 01389 in the First Judicial

---

[2] Issue preclusion, on the other hand, requires: "'(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final;...(3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation;'and (4) the issue was actually and necessarily litigated.'" *Five Star Capital*, 194 P.3d at 713, 124 Nev. 1055 (citation omitted).

District Court of the State of Nevada in and for Carson City.

### 1. Identity of claims

#### a. State court claims

On November 8, 2007, Plaintiff brought a Petition alleging that he had been medically prescribed a high protein diet, but the prison refused to provide it to him. (Doc. # 19 at 4, Doc. # 19-1 (Ex. A) at 1-9.) In the Petition, Plaintiff alleged that he suffered from high blood pressure, diabetes, and required kidney dialysis, and that his medical issues needed to be controlled, in part, by the high protein diet. (*Id.*) He further claimed that due to the refusal to provide the prescribed diet, he suffered a loss of muscle mass in his legs which made walking difficult. (*Id.*) Plaintiff filed a supplemental petition on January 17, 2008, stating that he was being denied his high protein diet three (3) times a day, constituting deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. # 19 at 4, Doc. # 19-1 (Ex. B) at 11-19.)

#### b. Federal court claims

Here, Plaintiff alleges that he was denied his medical diet in violation of the Eighth Amendment. (Doc. # 6 at 2.) Like the state court action, he alleges that he suffers from high blood pressure, diabetes, and is in renal failure requiring dialysis. (*Id.* at 3.) He asserts that he was issued a restricted medical, high-protein diet, which Defendants have refused to provide him, resulting in loss of weight and muscle mass. (*Id.*)

#### c. Conclusion

An examination of the state and federal claims reveals they are nearly identical. In fact, Plaintiff admits that he brought these same allegations in state court. (Doc. # 6 at 4.) Accordingly, the court finds an identity of claims exists between the state and federal actions.

### 2. Identity or privity of parties

Albert Garcia is the plaintiff in both the state and federal court actions. Defendants in this action are Jason Geer, a cook at NNCC, and Jimmie Burton, the former Food Manager at NNCC. (Doc. # 6 at 2, Doc. # 19 at 2.) The Petition in state court was brought against Jimmie Burton as well as the warden of NNCC and the director of nursing at NNCC. (Doc. # 19-1 (Ex.

A) at 1-9.)

Defendants recognize that Plaintiff names Jimmie Burton and Jason Geer in this action, but Jimmie Burton is the only defendant in this action that was named in the state court action. (Doc. # 19 at 6.) Because Jimmie Burton was named in both actions, there is no question that claim preclusion applies to him.

With respect to Jason Geer, Defendants are correct that he is a current employee of NDOC sued for actions taken as an NDOC employee. (Doc. # 6, Doc. # 19.) For this reason, the court finds there is privity between the defendants in the state court action and the instant action. *See Funds for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992 (citing *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940) (finding that privity exists between officers of the same government so that a judgment in a suit between a party and a representative of the government is res judicata in relitigation of the same issue between that party and another officer of the government)). Therefore, the court finds that this prong of the claim preclusion analysis has been satisfied.

### 3. Final judgment on the merits

In Nevada, "[w]hile the requirement of a valid final judgment does not necessarily require a determination on the merits, it does not include a case that was dismissed without prejudice or for some reason (jurisdiction, venue, failure to join a party) that is not meant to have a preclusive effect." *Five Star Capital*, 194 P.3d at n. 27 (citing 18 *Moore's Federal Practice*, § 131.30[3][a] (3d ed. 2008); *Restatement (Second) of Judgments* § 19 cmt. a, § 20 (1982); NRCP 41(b)).

After receiving Plaintiff's petition, the state court ordered the defendants named therein answer (hereinafter referred to as NDOC) or respond to the Petition. (Doc. # 19 Ex. D at ¶ 1.) NDOC filed a Motion to Dismiss the Petition for a Writ of Mandamus. (Doc. # 19-1 (Ex. C) at 21-53), Doc. # 19-2 (Ex. D) at 2 (¶ 2).) The motion argued that Plaintiff's Petition was not appropriate because he had an adequate remedy at law, a civil action. (*See id.*) Plaintiff opposed the motion, and NDOC replied. (*Id.* at 2-3 (¶ 3).) Plaintiff filed a supplement to his Petition. (*Id.*)

8

The court ordered that NDOC provide responses to the following questions: (1) is Garcia entitled to a special diet; (2) has any such special diet been ordered or prescribed by any physician; and (3) if such a special diet has been ordered or prescribed by a physician, the NDOC was to articulate any reason why the diet had not been provided. (Doc. # 19-2 (Ex. D) at 3 (¶ 4).) NDOC responded: (1) Garcia is a candidate for a special diet; (2) Dr. Karen Gedney did recommend a special medical diet for Garcia; and (3) Garcia was provided a high protein diet consistent with Dr. Gedney's recommendation at all relevant times. (*Id.* at ¶ 5.) To support their response, NDOC produced affidavits from Dr. Gedney, Warden Benedetti, Food Manager Burton, and Director of Nursing Peery, confirming that Plaintiff received a high protein diet in accordance with Dr. Gedney's recommendations at all relevant times. (*Id.* at ¶ 6.) NDOC also produced a restricted diet order form executed by NNCC physician, Dr. Marr, confirming renewal of the same diet that Plaintiff was then being served. (*Id.* at ¶ 7.)

The First Judicial District Court of the State of Nevada in and for Carson City issued an Order Denying Petition for Writ of Mandamus. (Doc. # 19-2 (Ex. D) at 2-4.) The Order sets forth, in great detail, the factual and procedural findings relative to Plaintiff's Petition, as well as the court's conclusions of fact and law. (*Id.* at 3-4.) The court found, that at all relevant times, Plaintiff was provided with a healthy and appropriate high protein diet as prescribed by a physician. (*Id.* at 4 (¶ 3).) The court further concluded that NDOC had, at all relevant times, met or exceeded its duties requiring provision of a healthy diet to Plaintiff. (*Id.* at ¶ 4.) Finally, the court found that the preponderance of the evidence established that the NDOC was not required to take any action regarding Plaintiff's diet different than that prescribed and provided to him, and that Plaintiff had not produced sufficient evidence to warrant a finding that any change in his diet was necessary. (*Id.* at ¶¶ 5-6.)

Plaintiff appealed the order denying the Petition, and the appeal was denied as untimely. (Doc. # 19 Ex. E.)

The court agrees with Defendants that the First Judicial District Court for the State of Nevada decided Plaintiff's action on the merits, and not on some technicality or other reason not meant to have a preclusive effect. *See Five Star Capital*, 194 P.3d at n. 27. Therefore, the

9

1  court finds this prong of the claim preclusion analysis has been satisfied.

2  In conclusion, the court finds that Plaintiff is precluded from re-litigating the claims
3  raised in this action related to the denial of a special medically prescribed diet at NNCC.
4  Because of this finding, the court need not reach Defendants' arguments that they did not act
5  with deliberate indifference, that Plaintiff's claims are barred by the applicable statute of
6  limitations, or that Defendants are entitled to qualified immunity. The court recommends that
7  summary judgment be granted in Defendants favor.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 19).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: December 21, 2011.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE